NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA KHOROZIAN, | : |
| Plaintiff, | : OPINION |
| v. | : Civ. No. 06-2798 (WHW) |
| HUDSON UNITED BANCORP, TORONTO DOMINION BANK, AND ITS SUBSIDIARY TD BANKNORTH INC., and/or EMPLOYEES, AGENTS, BANK OFFICERS, BOARD MEMBERS, MEMBERS OF THE ADVISORY BOARD, AND SHAREHOLDERS (ALL OF WHICH WILL BE NAMED AT A LATER TIME) JOHN DOES (1-100), XYZ CORPS (1-100), jointly, severally, collectively, | : |
| Defendants. | : |

**Walls, District Judge**

Plaintiff Angela Khorozian files a motion to remand this matter to state court. Pursuant to Fed. R. Civ. P. 78, the Court decides the motion without oral arguments. Plaintiff's motion to remand is granted.

**Facts and Procedural Background**

Plaintiff Angela Khorozian ("Khorozian") is a New Jersey citizen. Defendant TD Banknorth Inc. ("TD Banknorth") is a Delaware corporation with its principal place of business in Maine. Defendant Hudson United Bancorp ("Hudson United") was a corporation with its

**NOT FOR PUBLICATION**

principal place of business in New Jersey.  Some time between 2000 and May 2006 Hudson United merged entirely into TD Banknorth.  TD Banknorth engages in retail banking, as did Hudson United.  The complaint also includes as defendants Hudson United officers, employees, directors, and shareholders, as well as numerous unnamed, fictitious persons and entities.

In 2000, Khorozian decided to help Eduardo Queirolo, a Brazilian acquaintance, negotiate $20,398,872 in checks through a United States bank in return for half of a $6 million commission from a third person, Mr. Camilo.  Ostensibly, Camilo wished to negotiate the checks in the United States to avoid high Brazilian taxes.

To facilitate negotiation of the checks, Khorozian sought to open a commercial bank account at Hudson United.  A friend who sat on Hudson United's board of directors, John Demetrius, referred her to David Yanagisawa, a Senior Vice President at the bank.

Yanagisawa established an account for Khorozian after she informed him that funds would later be wired into the account.  The account was in the name of "Sugarbank," a New Jersey corporation whose authorization to do business had lapsed due to its failure to pay taxes.  She told Yanagisawa that the funds were destined for investment in a sugar plantation in Africa.

On May 25, 2000, Queirolo obtained two checks in Brazil, apparently drawn on the accounts of Costco Wholesale Corp. and Liberty Carton Co.  The checks were payable to an individual named Luiz Carlos Teixiera.  Several days later, Queirolo arrived in the United States with the checks.  Khorozian endorsed both checks, making them payable to Sugarbank.

The next day, Khorozian and Queirolo went to Hudson United, where they were assisted by the Custom Branch Manager, Anthony Moscati.  At this meeting, Khorozian introduced

**NOT FOR PUBLICATION**

Queirolo as "Mr. Teixiera," the individual to whom the checks were payable. Moscati showed the checks to Tom Shara, the Executive Vice President in charge of commercial loans. Shara accepted the checks, but subjected them to a thirty-day hold for verification.

Hudson United called Costco and Liberty Carton to verify the checks' authenticity. The companies informed the bank that they had not issued the checks. Hudson United called the FBI, which arrested Khorozian and Queirolo. Queirolo pled guilty to conspiracy to commit bank fraud and appeared as a government witness at Khorozian's trial. The jury found Khorozian guilty of bank fraud and conspiracy to commit bank fraud. The Court imposed a sentence of 18 months in prison on each count, to run concurrently.[1]

The Court of Appeals for the Third Circuit denied Khorozian's appeal in June 2003. The United States Supreme Court denied her petition for writ of certiorari.

In 2006 Khorozian filed a civil complaint against Hudson United and TD Banknorth, among other defendants, in New Jersey state court. The complaint states eleven causes of action: breach of contract; breach of implied duty to act in good faith and in fair dealing; common law fraud; breach of implied contract; consumer fraud; promissory estoppel; tortious interference; defamation; negligence/false imprisonment; bailment; breach of fiduciary duty. In sum, Khorozian seeks to hold the defendants liable for the consequences of the bank fraud scheme.

On June 21, 2006 TD Banknorth filed notice of the action's removal to the New Jersey District Court. TD Banknorth states that this Court has jurisdiction based on the parties'

---

[1]This opinion recites the facts that were found by the Court of Appeals when it denied Khorozian's appeal of her criminal conviction. See U.S. v. Khorozian, 333 F.3d 498, 501-03 (3d Cir. 2003).

**NOT FOR PUBLICATION**

diversity of citizenship.

On June 23, 2006 Khorozian filed a motion to remand the action to state court. Khorozian's reply to TD Banknorth's opposition to this motion consisted of a second motion, a motion requesting that this Judge disqualify himself pursuant to 28 U.S.C. § 455A. On July 12, 2006 TD Banknorth filed a motion to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6). On August 10, 2006 TD Banknorth filed a Fed. R. Civ. P. 11 motion for sanctions against Khorozian and her counsel, Strasser, Asatrian, Asatrian, and Syme, LLP. This opinion decides the motion to remand. The remaining motions are rendered moot.

**Motion to Remand**

28 U.S.C. §1447© requires a district court to remand a case back to state court when "it appears that the district court lacks subject matter jurisdiction." When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991). "[R]emoval statutes 'are to be strictly construed against removal, and all doubts resolved in favor of remand.'" Id. at 111 (citations omitted).

Khorozian argues that complete diversity does not exist because the complaint is directed towards certain unidentified defendants.[2] The complaint characterizes these defendants as "EMPLOYEES, AGENTS, BANK OFFICERS, BOARD MEMBERS, MEMBERS OF THE ADVISORY BOARD, AND SHAREHOLDERS (ALL OF WHICH WILL BE NAMED AT A LATER TIME) JOHN DOES (1-100), XYZ CORPS (1-100)." Khorozian claims that some of

---

[2] The motion contains two other arguments for remand that this opinion need not address.

**NOT FOR PUBLICATION**

these unidentified defendants are residents of New Jersey, and therefore destroy complete diversity. In response TD Banknorth asserts that the Court should disregard fictitious defendants in determining whether a defendant's inclusion requires remand.

It is generally true that "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). The Third Circuit has taken this to mean that "John Doe" defendants do not bar removal for diversity, unless the complaint contains allegations that identify those John Doe defendants to some extent. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29-30 (3d Cir. 1985).

Here, "JOHN DOES (1-100)" and "XYZ CORPS (1-100)" are fictitious defendants under section 1441. Khorozian merely puts them in the caption, without including any corresponding allegations in the complaint. This is not enough to destroy diversity. Id.; Chism v. Nat. Heritage Life Ins. Co., 637 F.2d 1328 (9th Cir. 1981). The Court disregards these defendants' citizenship entirely in deciding the motion to remand.

The other set of unnamed defendants, "EMPLOYEES, AGENTS, BANK OFFICERS, BOARD MEMBERS, MEMBERS OF THE ADVISORY BOARD, AND SHAREHOLDERS (ALL OF WHICH WILL BE NAMED AT A LATER TIME)," are not clearly fictitious under section 1441. The Court has not found, nor does TD Banknorth offer, any precedent for disregarding these defendants' citizenship in a motion for remand. Even if the Court determines that these defendants are equivalent to John Doe defendants, the complaint contains allegations that identify them to some extent. See Compl. First Count ¶¶ 10, 14; Third Count ¶ 7.

These defendants are not fictitious defendants for the purposes of section 1441. Since it

**NOT FOR PUBLICATION**

does not contest the non-diversity of these defendants, TD Banknorth can only preserve diversity by showing that these defendants are fraudulently joined. In re Briscoe, 448 F.3d 201, 217 (3d Cir. 2006) ("removing party carries a heavy burden of persuasion in making this showing"); Abels, 770 F.2d at 32-34. In its opposition to remand, TD Banknorth did not carry its burden.[3] The Court grants plaintiff's motion for remand, and will not consider the remaining motions.[4]

**Conclusion**

For the reasons stated, plaintiff's motion for remand is granted. The Court remands this action to the Superior Court of Passaic County.

                                                                                 s/ William H. Walls
                                                                                 **United States Senior District Judge**

---

[3] The Court will not consider TD Banknorth's motion to dismiss to evaluate whether a valid claim exists against the unnamed defendants, because TD Banknorth has not established subject matter jurisdiction. In any case, TD Banknorth's motion to dismiss is directed to the complaint's overall deficiencies, not the fraudulent joinder of the unnamed parties. The Court will refrain from addressing the merits of the motion to dismiss at this time.

[4] The Court may impose Rule 11 sanctions even without subject matter jurisdiction over the underlying action. Willy v. Coastal Corp., 503 U.S. 131, 137-138 (1992). However, TD Banknorth asks the Court to do so on the basis of papers filed in state court before removal. Rule 11 generally does not permit sanctions on the basis of state court filings, absent advocacy of the sanctionable positions in federal court. See Wright & Miller, 5A Federal Practice & Procedure § 1333.